In re EASTERN MFG. CO.

No. 5496.

District Court, D. Maine, N. D.

Oct. 23, 1939.

---

[1] The cases are collated in 108 A.L.R. 966, 973.

Harold H. Murchie, of Bangor, Me., for debtor.

Ropes, Gray, Boyden & Perkins, of Boston, Mass., Bradley, Linnell, Nulty & Brown, of Portland, Me., Herrick, Smith, Donald & Farley, of Boston, Mass., Hiram S. Gans and Harold F. Levin, both of New York City, Cook, Hutchinson, Pierce & Connell and Verrill, Hale, Dana & Walker, all of Portland, Me., and Fellows & Fellows and George F. Eaton, all of Bangor, Me., for various committees.

PETERS, District Judge.

The debtor's petition was filed December 28, 1937, under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, and the proceeding has continued under that section. No trustee was appointed, the debtor being continued in possession at a considerable saving of expense.

A plan of reorganization dated November 15, 1938, later amended, was con- firmed March 7, 1939, and a reorganization committee was appointed which made its report on April 26, 1939. The corporation was not found to be insolvent and has now been successfully reorganized.

The total indebtedness of the corporation at the beginning of the proceedings was approximately $4,350,000. Its outstanding first mortgage seven percent bonds with accrued interest amounted to about $2,000,000; bonds of a subsidiary (Orono Pulp & Paper Co.) with interest aggregated about $300,000, and bank loans of a subsidiary upon which the debtor was liable as indorser with no interest in arrears amounted to $1,152,000. Timberland obligations and current indebtedness made up the balance.

The so-called "old preferred stock" consisted of 38,976 shares with accrued dividends of $1,045,856. The common stock outstanding, no par value, consisted of 110,663 shares.

Petitions for attorney fees before the court are by counsel representing three different committees for seven percent bondholders and one committee for the so-called Orono bonds, one for the banks, one for the preferred stock, and one for the common stock. In addition, there are petitions by the attorneys for the debtor and petitions by the debtor to make certain payments in connection with the proceeding.

The matter had best be considered by grouping the claims for allowances.

Three separate committees, representing seven percent bonds, intervened in the proceeding. The first and oldest committee, called the Treat Committee, represented at the time of the reorganization about $400,000 of bonds. Counsel for this committee were Messrs. Herrick, Smith, Donald & Farley of Boston.

The so-called Bank Committee was an organization representing Maine savings banks, which held about $225,000 of the seven percent bonds, and was represented by Bradley, Linnell, Nulty & Brown of Portland.

Another committee, called the Lees Committee, representing not more than $150,000 of bonds, also intervened, with Harold F. Levin, Esq., of New York, and Fellows & Fellows of Bangor, as counsel.

There was good reason for the Treat Committee and it had been functioning some years before the debtor filed its peti-

tion. The Committee was composed of gentlemen of high standing and with knowledge of the situation who might well have represented all the seven percent bonds. However, it was quite proper that the organization of savings banks in Maine should have its own committee, and it did.

The Lees Committee was not really necessary and could well have joined with one of the other committees.

It happened that the court foresaw that there might be requests for remuneration by members of numerous committees as well as their counsel, and near the beginning of the proceedings, by announcement and by order filed with the case, made it clear that no member of any committee would receive any compensation and no unnecessary duplication of effort by counsel would be paid for out of the assets while in control of the court. That was thoroughly understood when the committees intervened.

The petitions for intervention by the three committees representing seven percent bondholders and by the committee for the preferred stock were allowed March 8, 1938, and that of the common stockholders September 7, 1938.

The Reorganization Committee which was appointed March 7, 1939, and made its report April 26, 1939, was composed of seven of the lawyers whose petitions for compensation included work on that committee. The fact that this committee was larger than necessary accounts for some waste of time, which I think characterized its work.

The total fees asked for by counsel representing the seven committees, including the creditor banks, amount to .................................... $97,050.00 as follows:

| | | |
|---|---|---|
| Counsel for Treat Committee, | $18,600.00 | |
| " " Savings Banks, | 4,750.00 | |
| " " Lees Committee, | 19,000.00 | |

| | |
|---|---|
| Total for seven percent bondholders' committees .......................... | $42,350.00 |
| Counsel for Orono bonds (also representing other interests as below): | 10,000.00 |
| Counsel for creditor banks............ | 14,000.00 |
| " " preferred stock .......... | 10,000.00 |
| " " common stock .......... | 20,700.00 |
| | $97,050.00 |

■ Counsel connected with the proceeding were of high standing and rendered efficient and valuable service, but they must realize that the limitations of the law, both statutory and by repeated decisions of the courts, not only preclude a munificent attitude, but require that the attitude of the court be almost parsimonious in these cases. The reasonableness of the allowances mentioned in the statute refers not only to the service rendered but requires consideration of the situation from the standpoint of the debtor corporation and its assets. It should be noted also that the services were rendered in the northern division of this district where legal fees are naturally less than in large centers of population.

One matter to be determined at the outset is the sum available which may be properly taken from the assets for expenses of the reorganization. The corporation has set aside the sum of $100,000 for that purpose, and after considering the whole picture I conclude that the total expenses can and should be kept within that figure.

| | |
|---|---|
| There has been paid out previously, on orders by the Court, for miscellaneous expenses, including actual expenses of all committees and all counsel ......................................... | $16,024.87 |

There is to be paid out for special services expressly authorized:

| | |
|---|---|
| Old Colony Trust Company, Trustee ...................... | $1,500.00 |
| Merrill Trust Company, Trustee, Depositary and Distributor of Securities........... | 6,000.00 |
| Ropes, Gray, Boyden & Perkins, in connection with tax matters ...................... | 2,500.00 |
| Messrs. Nulty and Woodsum, for special services in connection with bank loans, the timberlands situation and water power ................ | 1,500.00 |
| | 11,500.00 |
| | $27,524.87 |

■ Counsel for the three committees of 7% bondholders suggest a total allowance to them of $42,350, as stated above. I find that the actual value of their services to the reorganization was less than that figure, and, after consideration, I fix it at about one-half the sum mentioned, divided again into a little less than one-half for Herrick, Smith, Donald & Farley, and the remainder between Bradley, Linnell, Nulty & Brown, Mr. Levin and Mr. Fellows, as follows:

| | Amount asked. | Amount allowed. |
|---|---|---|
| Herrick, Smith, Donald & Farley ............................. | $18,600.00 | $10,000.00 |
| Bradley, Linnell, Nulty & Brown | 4,750.00 | 4,750.00 |
| Harold F. Levin.................. | 15,000.00 | 5,000.00 |
| Fellows & Fellows.............. | 4,000.00 | 1,500.00 |
| | $42,350.00 | $21,250.00 |

705

In further explanation of these allowances it should be noted that a considerable part of the work charged for by the Herrick firm,—that is to say, work done on 76 days out of a total of days on which some work was done of 282,—was wholly before the petition for reorganization was filed in 1937.

The Portland firm of Bradley, Linnell, Nulty & Brown put such a modest estimate upon the value of their services that I cannot properly reduce it.

The somewhat larger cut in the figures submitted by Mr. Levin, and his associates, of New York, as the value of their services, is due to the fact that these services were largely unnecessary. Mr. Levin appeared first in the interest of special clients in New York whose interests he cared for with skill, but so far as the contribution made to a sound and successful reorganization is concerned, and taking into account duplication which was warned against, I feel that the values fixed upon his services and that of his associates is all that can be justified.

Counsel for the committee representing the Orono bonds, Mr. Eaton, also acted as counsel for the Merrill Trust Company, trustee under the Orono bond indenture and depositary and distributing agent. He asks for an allowance of $10,000, not an unreasonable sum for the service, but I feel that not more than $8,500 is available for counsel for that work, and that sum is allowed.

Substantially the same thing is to be said of the charge of Cook, Hutchinson, Pierce & Connell, and $8,500 is allowed that firm as counsel for the preferred stock committee.

The creditor banks had a large interest in the proceeding and were ably represented by Ropes, Gray, Boyden & Perkins of Boston, who were also active in the reorganization committee. Their charge is $14,000, but I feel that $10,000 is all that can be allotted them as counsel for the banks.

The common stock was represented by a committee whose counsel was Hiram S. Gans, Esq., of New York, and Verrill, Hale, Dana & Walker of Portland. Bills of $16,500 and $4,200 have been submitted by them respectively. The interests of the common stockholders were ably protected by these gentlemen, who were also helpful in the reorganization committee work, but again I feel that not more than $10,000 can be allotted for this group. I have made the best division I can of that figure, and will allow $7,500 to Mr. Gans and $2,500 to the Portland firm.

The above allowances to counsel aggregate $58,250 out of a total of $97,050 asked for.

In addition to counsel for the various committees and other interests, counsel for the debtor have asked for allowances of $12,000. Harold H. Murchie, Esq., the principal counsel for the debtor, and his associate Mr. Briggs, probably did more work and spent more time in the proceedings than any other of the counsel. Most, if not all, of the papers were drawn in the first instance by Mr. Murchie. He began his services with the drawing and presentation of the petition in 1937 and he continued to the completion of the reorganization. If it were not for the fact that he was a regular counsel for the debtor and received partial compensation in that capacity he would be entitled to more than he has requested. The exigencies of the situation, however, require that his figure be reduced to $9,000, and that of his associate be fixed at $2,000.

The debtor, in a separate petition, has also asked for an allowance of $2,300 to Messrs. Ingalls and Snyder for separate services rendered the corporation near the beginning of the proceeding, and I think that sum should also be allowed, which makes a total of $99,074 for the whole expense of the reorganization, which I consider "reasonable" under all the circumstances of the situation, details of which it would be useless to try to enumerate.

The president of the debtor corporation rendered valuable service over a considerable period in connection with the reorganization proceeding and a petition for an allowance for him for the time spent over and above that required for his regular duties was presented in his behalf, but later withdrawn by him. The same is true in a lesser degree of the treasurer. This commendable attitude on the part of these officers of the corporation renders it unnecessary to consider their petitions.

Orders may be drawn for payments in accordance with the above opinion.